United States District Court
Southern District of Texas

**ENTERED**

April 15, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROGELIO ALBERTO OLIVERO NAVA, | § | |
| LUIS ENRIQUE BRUZUAL CARRION, and | § | |
| JUAN CARLOS RUA CASTILLO, | § | |
| Petitioners, | § | |
| | § | CIVIL ACTION NO. 1:26-CV-230 |
| VS. | § | |
| | § | |
| WARDEN OF PORT ISABEL SERVICE | § | |
| PROCESSING CENTER, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## <u>ORDER AND OPINION</u>

Petitioners Rogelio Alberto Olivero Nava, Luis Enrique Bruzual Carrion, and Juan Carlos Rua Castillo are currently detained by Immigration and Customs Enforcement at immigration detention facilities within this Court's jurisdiction. They move for a temporary restraining order requiring their immediate release, based on their alleged temporary protected status ("TPS") under 8 U.S.C. § 1254a and that statute's prohibition of detention of individuals with TPS based on their immigration status. Petitioners acknowledge that in January 2025, Respondents took steps that, if in effect, would mean that Petitioners no longer have TPS. But a federal district court in California declared those actions unlawful. Relying upon that decision, Petitioners argue that they retain TPS and Section 1254a(d)(4) prohibits their continued detention.

For the following reasons, and based on the record and the applicable law, the Court finds that Petitioners fail to satisfy the requirements for the issuance of the requested temporary restraining order.

I.      **Factual and Procedural Background**

A.  **Temporary Protected Status**

1.  **Background**

In 1990, Congress created a humanitarian program to create a pathway to protection for certain immigrants.  Under 8 U.S.C. § 1254a, the Secretary of the Department of Homeland Security may designate a country for TPS after determining that individuals within the United States cannot safely return to that country due to extraordinary and temporary circumstances, such as armed conflict or a natural disaster. *See* 8 U.S.C. § 1254a(b).  The Secretary's initial TPS designation lasts from 6 to 18 months. *See* 8 U.S.C. § 1254a(b)(2).

Once the Secretary designates a country for the TPS program, individuals from that country may apply for TPS, which, if granted, provides benefits that include protection from removal and work authorization. *See* 8 U.S.C. § 1254a(a)(1).  To receive TPS, an individual must be "admissible as an immigrant" and have been "continuously physically present in the United States since the effective date of the most recent [TPS] designation[.]" *See* 8 U.S.C. § 1254a(c).

The Secretary may extend or terminate a TPS designation, but must do so "at least 60 days before the end of the initial period of designation, and any extended period of designation[,]" and "shall determine whether the conditions for such designation under this subsection continue to be met."  8 U.S.C. § 1254a(b)(3)(A).  Additionally, the Secretary may "redesignate" a country for TPS, initiating a new "effective date" for the designation and providing TPS benefits to a new set of individuals.

2.  **TPS Designation for Venezuela**

On March 8, 2021, then-DHS Secretary Alejandro Mayorkas designated Venezuela for the TPS program for an 18-month period. *See* 86 Fed. Reg. 13574, 13577 (Mar. 9, 2021) ("2021 Designation").  The designation lasted through September 2022, but in that month, Secretary Mayorkas extended the designation through March 2024. *See* 87 Fed. Reg. 55024, 55027 (Sept.

8, 2022).  Then, in October 2023, he implemented a second extension, through September 2025. *See* 88 Fed. Reg. 68130, 68131 (Oct. 3, 2023).  These acts represented extensions under Section 1254a, meaning that the effective date under the 2021 Designation remained March 8, 2021.

On October 3, 2023, Secretary Mayorkas also redesignated Venezuela for TPS as an act separate and apart from his extension of the 2021 Designation, creating a new effective date that provided possible protection to Venezuelans who had entered the United States after March 8, 2021, but before October 3, 2023. *See id.* ("2023 Designation").  The 2023 Designation's initial term was through April 2025.

On January 17, 2025, Secretary Mayorkas extended the 2023 Designation through October 2, 2026. *See* 90 Fed. Reg. 5961 (Jan. 17, 2025).  In this act, Secretary Mayorkas also announced that "individuals registered under either the [2021 Designation] or the [2023 Designation]" could register under the extension of the 2023 Designation, to obtain protection through October 2, 2026. *See id.*

In January 2025, Secretary Kristi Noem became DHS Secretary.  The following month, she implemented two decisions impacting the 2023 Designation.  First, she vacated the January 2025 extension of the 2023 Designation. *See* 90 Fed. Reg. 8805 (Feb. 3, 2025).  Second, she terminated the 2023 Designation altogether, effective April 2, 2025. *See* 90 Fed. Reg. 9040 (Feb. 5, 2025) (collectively, the Court refers to the two decisions as the "Secretary's 2025 Actions").  Thus, after April 2, 2025, only the 2021 Designation would remain in effect, and that designation would expire in September 2025.

### B. Petitioners

Petitioners Rogelio Alberto Olivero Nava, Luis Enrique Bruzual Carrion, and Juan Carlos Rua Castillo are Venezuelan nationals.

Bruzual arrived in the United States in 2021 after fleeing Venezuela because he "was being threatened and harassed for [his] political opinions and [his] opposition to the current

3 / 12

government and feared for [his] life." (Bruzual Decl., Doc. 1–2, ¶ 4)  In 2024, Bruzual received TPS based on the 2023 Designation, and the following year he sought re-registration, although the Court's review of the record leaves unclear whether he received approval.  In January 2026, immigration officials detained Bruzual and later transferred him to the Port Isabel Detention Center.

In 2022, Rua arrived in the United States.  In 2024, Rua received TPS approval under the 2023 Designation, and the following year he renewed his status.  In November 2025, immigration officials detained Rua at an ICE check-in.  ICE subsequently transferred him to the Port Isabel Detention Center.

Nava arrived in the United States in 2023 after being tortured in Venezuela "because [he] was a member of a political party that opposed the government." (Nava Decl., Doc. 1–1, 2)  In 2024, Nava received TPS approval based on the 2023 Designation and he re-registered in September 2025.  The following month, immigration officials took him into custody when he reported for an ICE check-in.  Respondents currently detain Nava at the El Valle Detention Facility.

Each Petitioner is a member of the National TPS Alliance ("NTPSA"), which is a member-led organization that represents TPS holders in the country.

### C. *National TPS Alliance v. Noem* Litigation

Petitioners request that the Court give preclusive effect to a declaratory judgment issued in *National TPS Alliance v. Noem, et al.*, No. 25-CV-01766-EMC, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025) ("California Litigation").

That matter began in February 2025, when the NTPSA, along with seven of its members, brought suit in the Northern District of California to challenge the Secretary's 2025 Actions under

the Administrative Procedure Act and the Equal Protection Clause of the Fourteenth Amendment. NTPSA also sought a declaratory judgment that the Secretary's 2025 Actions were unlawful.[1]

In March, the court issued preliminary injunctive relief in NTPSA's favor. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. 2025) ("Postponement Order"). The court concluded that NTPSA had demonstrated a substantial likelihood of success on its APA and Equal Protection claims. *Id.* at 854. As relief, the court granted "[p]laintiffs' motion to postpone the agency actions at issue" and applied the relief "nationwide." *Id.* at 867. Based on the postponement, TPS remained in effect for covered individuals under both the 2021 Designation and the 2023 Designation.

The Secretary appealed and sought a stay of the Postponement Order. After the Ninth Circuit denied the request, the Secretary sought relief from the Supreme Court, which in May granted a stay of the Postponement Order. The stay remained in effect pending the resolution of the appeal to the Ninth Circuit "and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2729 (2025).

In August, the Ninth Circuit affirmed the district court's decision to postpone the Secretary's 2025 Actions. *See Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2025). The court explained that the Secretary's 2025 Actions had "stripped" hundreds of thousands of people "of [TPS] status and plunged [them] into uncertainty." *Id.* at 1029. The court affirmed the "postponement of agency action under the APA, effective nationwide," finding such relief "both permissible and necessary[.]" *Id.*

As the appeal of the Postponement Order progressed, proceedings also continued in the district court. In September 2025, the district court granted summary judgment in NTPSA's favor

---

[1] Although the California Litigation involved several plaintiffs, in this Order and Opinion, for ease of reference, the Court refers to them collectively and in the singular person as "NTPSA." The California Litigation also included claims related to the TPS program and Haiti. Those issues do not bear relevance to the instant matter.

as to the APA claim.[2]  The court concluded that "the Secretary's decision to terminate the 2023 Designation was unlawful" under the APA. *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1153 (N.D. Cal. 2025) ("Summary Judgment Order").  Based on that conclusion, the court "set[ ] aside, or vacate[d], each of the [2025 Actions] made by Secretary Noem." *Id.* at 1160; *see also id.* at 1164 (summarizing its findings and remedy: "It finds [the 2025 Actions] of Secretary Noem are unlawful and sets aside each of those agency actions.").  After directing the Clerk of Court to enter final judgment in NTPSA's favor as to its APA claim, and aware that the Government would appeal the decision, the court stayed the matter as to the Equal Protection claim. *Id.* at 1164.

On September 17, the Ninth Circuit denied the Government's request to stay the relief afforded through the Summary Judgment Order. *See Nat'l TPS All. v. Noem*, 163 F.4th 1152 (9th Cir. 2025).  But the following month, the Supreme Court granted such relief.  Taking into account its previous stay of the Postponement Order, the Supreme Court explained that "[a]lthough the posture of the case has changed, the parties' legal arguments and relative harms generally have not. The same result that we reached in May is appropriate here." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025).  The Supreme Court rendered the stay effective "pending the disposition of the Government's appeal in the [Ninth Circuit] and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Id.*

As the appeal of the Summary Judgment Order occurred, NTPSA returned to the district court and moved for a declaratory judgment.  On December 10, the district court granted the requested relief.  The court explained that "Plaintiffs do not assert any new legal theory in support" of a declaratory judgment, and that "the requested relief is essentially derivative of the earlier [summary] judgment." *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 3539156, at *1 (N.D. Cal. Dec. 10, 2025) ("Declaratory Judgment").  In opposition, the Government relied on the

---

[2] NTPSA did not move for summary judgment as to the Equal Protection claim.  The defendants in the California Litigation moved for summary judgment in their favor on this cause of action, but the California court denied that motion. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1158 (N.D. Cal. 2025).

Supreme Court's stay of the Summary Judgment Order.  The district court rejected the argument, reasoning that "there are several reasons why the Supreme Court could have stayed the Court's final judgment setting aside the agency actions but still left open the door to declaratory relief[.]" *Id.*  Thus, "[b]ased on the merits analysis in its prior summary judgment order, the Court declare[d] that (1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Id.* at *3. The court described the Declaratory Judgment as "a lesser form of remedy than that already granted." *Id.* at *1.

In January 2026, the Ninth Circuit affirmed the Summary Judgment Order. *See Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026).  The deadline has not yet elapsed for the filing of a petition for a writ of certiorari.

### D.  Procedural Background

In February 2026, Petitioners filed this habeas action and an accompanying motion for a temporary restraining order, alleging that they enjoy TPS and, based on that status, are entitled to immediate release because Section 1254a(d)(4) prohibits their detention based on their immigration status.

On March 4, the Court held a hearing and subsequently issued a temporary restraining order enjoining respondents from removing or transferring Petitioners while the Court considered the parties' arguments. (First TRO, Doc. 18)  The Court also established a schedule for additional briefing, which the parties have submitted. (*See* Resp., Doc. 23; Reply, Doc. 24)

On April 8, the court extended the temporary restraining order to maintain the status quo while it considered the arguments of the parties. (Second TRO, Doc. 25)

### II.   Petitioners' Motion for a Temporary Restraining Order

In the present matter, Petitioners move for a temporary restraining order.  To obtain such relief, Petitioners "must establish that [they are] likely to succeed on the merits, that [they are]

likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). When the government is the opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

For the following reasons, the Court resolves the request for a temporary restraining order based on the first factor.

### A. The Parties' Positions

In their Motion, Petitioners request that the court apply the doctrine of collateral estoppel as to the Declaratory Judgment. Petitioners argue that the Declaratory Judgment "has a preclusive effect on future proceedings involving the same parties[,]" and that the effect of the Declaratory Judgment is that "Petitioners' TPS status has never been lawfully terminated, and it remains in effect." (Mot., Doc. 2, 6) Based on this logic, Petitioners then rely on Section 1254a(d)(4), which expressly prohibits immigration-based detention for individuals with TPS.

Respondents contend first that the Court should "decline to give the district court's declaratory judgment preclusive effect[.]" (Resp., Doc. 23, 12) In support of this argument, Respondents provide substantial briefing explaining their position that the California court lacked jurisdiction to grant the relief it afforded, and that the court misconstrued the applicable statute and governing law. Second, Respondents argue that even if collateral estoppel applied in this lawsuit, the Declaratory Judgment "only has the effect of declaring agency action unlawful but does not vacate such agency action." (*Id.* at 23) As a result, continue Respondents, the "Extension Vacatur and the TPS terminations remain in effect, meaning Petitioners do not currently have TPS" and they "are lawfully detained under 8 U.S.C. § 1225(b)(2)(A) because each Petitioner entered the United States unlawfully." (*Id.*)

### B. Collateral Estoppel

The Court agrees with Petitioners that collateral estoppel applies in this case.

"The applicability of collateral estoppel is a question of law[.]" *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* "Collateral estoppel is appropriate where four conditions are met: (1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; and (4) there must be no special circumstance that would render estoppel inappropriate or unfair." *Id.* (cleaned up) (citations omitted).[3]

Here, Respondents do not attack any of the factors relevant to collateral estoppel. Instead, they challenge the California court's jurisdiction to issue the relief it provided, and argue that the court applied an incorrect analysis in reaching its decision. Through these arguments, Respondents attempt precisely what the doctrine of collateral estoppel prohibits–i.e., a relitigation in a second forum of issues that a party had the opportunity to litigate in a preceding lawsuit involving the same parties. The position that Respondents take in this lawsuit is identical to the one they presented to the California court. And Respondents do not contest that they fully and vigorously litigated those issues, and that the issues were necessary to support the Declaratory Judgment. In addition, Respondents do not deny that Petitioners are members of NTPSA or that such membership effectively means that Petitioners were parties to the lawsuit before the California court. As a result, the Court finds that Petitioners are likely to succeed on their

---

[3] The "special circumstances" factor applies primarily when a plaintiff requests offensive–i.e., non-mutual–collateral estoppel. *See Kariuki*, 709 F.3d at 506 (citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290–91 n.12 (5th Cir. 1995)).

argument that collateral estoppel applies and that Respondents cannot challenge the Declaratory Judgment in this lawsuit.[4]

### C. Remedy

Having concluded that collateral estoppel applies as to the Declaratory Judgment, the Court next considers whether Petitioners have demonstrated that the Declaratory Judgment entitles them to a temporary restraining order requiring their immediate release. Based on the applicable law and the current record, the Court concludes that it does not.

A declaratory judgment "conclusively resolves the legal rights of the parties." *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023). But a declaratory judgment "does not, in itself, coerce any party or enjoin any future action." *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 n.16 (5th Cir. 1994). Injunctive relief constitutes a form of coercive relief. *See id.* at 951. And Petitioners request coercive relief by seeking an order requiring their immediate release. The APA itself authorizes both declaratory and coercive relief, permitting courts to "hold unlawful *and* set aside agency actions[.]" 5 U.S.C § 706(2) (emphasis added).

The decisions in the California Litigation recognized this difference in remedies. In the Postponement Order, the court concluded that the "Plaintiffs have made a showing that the Secretary has acted unlawfully." *Nat'l TPS All.*, 773 F. Supp. 3d at 840. The relief, however, went further than the finding of unlawfulness. The court expressly "postpone[d] the actions taken by Secretary Noem[.]" *Id.* at 868. Similarly, in the Summary Judgment Order, the court held that as "a matter of law, the Secretary's decision to terminate the 2023 Designation was unlawful[.]" *Nat'l TPS All.*, 798 F. Supp. 3d at 1153. As relief, the court "set aside" the Secretary's 2025 Actions. And in the Declaratory Judgment, the court explained that the Supreme Court could "have stayed the Court's final judgment *setting aside the agency actions* but still left open the door to *declaratory*

---

[4] Petitioners cite to district courts in California that have applied a preclusive effect to the Declaratory Judgment. (Mot. for TRO, Doc. 2, 6) (citing *Gonzalez v. Noem,* No. 5:26-cv-00357-JWH-AJR (C.D. Cal. February 5, 2026); *Salas Leon v. Chestnut*, No. 1:26-cv-01080-DC-AC, 2026 WL 523231 (E.D. Cal. February 24, 2026)).

*relief*[,]" implicitly recognizing the distinction between the two forms of remedy. *Nat'l TPS All.*, 2025 WL 3539156, at *3 (emphasis added). The court issued declaratory relief, but did not set aside any agency action.

In their Motion, Petitioners fail to give effect to this distinction. They appear to argue that they retain TPS status because of the Declaratory Judgment. (*See* Motion, Doc. 2, 6) This position, however, turns on the mistaken view that the Declaratory Judgment in itself affected the Secretary's 2025 Actions. It did not. Such an effect would require coercive relief–i.e., the setting aside or vacatur of those actions. Petitioners fail to demonstrate how the Declaratory Judgment afforded such relief. It is true that in the California Litigation, the court initially postponed the Secretary's 2025 Actions and then set aside those actions. But in each instance, the Supreme Court stayed the specific remedy. And the Declaratory Judgment contains no language suggesting such relief. In other words, the decisions in the California Litigation postponing or setting aside the Secretary's 2025 Actions are subject to a Supreme Court stay, and the only decision not subject to a stay does not purport to provide such relief. As a result, no binding court decision exists that has set aside the Secretary's 2025 Actions. And those actions stripped Petitioners of TPS.

Perhaps mindful of the limitations of the Declaratory Judgment, Petitioners also argue that they "ask only that the Court apply the preclusive effect of [the Declaratory Judgment] in this case[,]" and that after doing so, "the Court must find that Petitioners retain TPS, and thus that [their] detention is unlawful." (Reply, Doc. 24, 4) Through this argument, Petitioners effectively request that the Court go beyond the Declaratory Judgment and render the coercive relief that the Declaratory Judgment did not include. As to this argument, the Court agrees with Respondents that granting such a remedy in this lawsuit would "circumvent the Supreme Court's stay." (Resp., Doc. 23, 23) In the Declaratory Judgment, the court explained that "Plaintiffs do not assert any new legal theory in support" of a declaratory judgment, and that "the requested relief is essentially derivative of the earlier [summary] judgment." *Nat'l TPS All.*, 2025 WL 3539156, at *1. Thus,

11 / 12

when issuing the Declaratory Judgment, the court relied solely on its analysis within its Summary Judgment Order. The Supreme Court has stayed the coercive relief that rested on that same analysis. In the current lawsuit, Petitioners in essence request that the Court provide coercive relief based on the reasoning that undergirds the Declaratory Judgment and for which the Supreme Court stayed a coercive remedy. The Court declines to do so. As a result, the Court finds that Petitioners have failed to demonstrate a substantial likelihood of succeeding on the merits of such a claim, as the relief they request would run counter to the Supreme Court's stay.

## III.    Conclusion

Given its conclusion that Petitioners have not demonstrated a substantial likelihood of success on the merits of their claim, the Court need not address the remaining factors of the governing standard for the issuance of a temporary restraining order. As a result, it is:

**ORDERED** that Petitioners' *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (Doc. 2) is **DENIED**.

Signed on April 15, 2026.

Fernando Rodriguez, Jr.
United States District Judge