United States District Court
Southern District of Texas
**ENTERED**
October 15, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROGELIO ALBERTO OLIVERO NAVA,<br>LUIS ENRIQUE BRUZUAL CARRION, and<br>JUAN CARLOS RUA CASTILLO,<br><br>Petitioners,<br><br>VS.<br><br>WARDEN OF PORT ISABEL SERVICE<br>PROCESSING CENTER, *et al.*,<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-CV-230 |

## ORDER AND OPINION

Petitioners Rogelio Alberto Olivero Nava, Luis Enrique Bruzual Carrion, and Juan Carlos Rua Castillo filed this action while detained by Immigration and Customs Enforcement at immigration detention facilities within this Court's jurisdiction. They request that the Court order their release because they hold Temporary Protected Status. Petitioners acknowledge that in January 2025, the then-Secretary of Homeland Security took steps that, if in effect, would mean that Petitioners no longer possess TPS. But a federal district court in California has declared the Secretary's actions unlawful. Relying upon that decision, Petitioners argue that they retain TPS and that 8 U.S.C. § 1254a(d)(4) prohibits their continued detention.

Respondents move to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or, alternatively, for summary judgment. (Motion, Doc. 23)

For the following reasons, the Court concludes that it lacks subject matter jurisdiction as to Petitioner's non-constitutional claims, and that their cause of action based on the Due Process Clause is not viable.

# I. Factual and Procedural Background

## A. Temporary Protected Status

### 1. Background

In 1990, Congress created a humanitarian program to create a pathway to protection for certain immigrants. Under 8 U.S.C. § 1254a, the Secretary of the Department of Homeland Security may designate a country for TPS after determining that aliens within the United States cannot safely return to that country due to extraordinary and temporary circumstances, such as armed conflict or a natural disaster. *See* 8 U.S.C. § 1254a(b). The Secretary's initial TPS designation lasts from 6 to 18 months. *See id.* at § 1254a(b)(2).

Once the Secretary designates a country for the TPS program, individuals from that country may apply for TPS, which, if granted, provides benefits that include protection from removal and work authorization. *See id.* at § 1254a(a)(1). To receive TPS protection, an individual must be "admissible as an immigrant" and have been "continuously physically present in the United States since the effective date of the most recent [TPS] designation[.]" *See id.* at § 1254a(c).

The Secretary may extend or terminate a TPS designation, but must do so "at least 60 days before the end of the initial period of designation, and any extended period of designation[,]" and "shall determine whether the conditions for such designation under this subsection continue to be met." *Id.* at § 1254a(b)(3)(A). Additionally, the Secretary may "redesignate" a country for TPS, initiating a new "effective date" for the designation and permitting a new group of nationals from the designated country to become TPS beneficiaries.

### 2. TPS Designation for Venezuela

On March 8, 2021, then-Secretary Alejandro Mayorkas designated Venezuela for the TPS program for an 18-month period. *See* 86 Fed. Reg. 13574, 13577 (Mar. 9, 2021) ("2021 Designation"). The designation lasted through September 2022, but in that month, Secretary Mayorkas extended the designation through March 2024. *See* 87 Fed. Reg. 55024, 55027 (Sept.

8, 2022). Then, in October 2023, he implemented a second extension, through September 2025. *See* 88 Fed. Reg. 68130, 68131 (Oct. 3, 2023). These acts represented extensions under Section 1254a, meaning that the effective date under the 2021 Designation remained March 8, 2021.

On October 3, 2023, Secretary Mayorkas also redesignated Venezuela for TPS as an act separate and apart from his extension of the 2021 Designation, creating a new effective date that provided possible protection to Venezuelans who had entered the United States after March 8, 2021, but before October 3, 2023. *See id.* ("2023 Designation"). The 2023 Designation's initial term was through April 2025.

On January 17, 2025, Secretary Mayorkas extended the 2023 Designation through October 2, 2026. *See* 90 Fed. Reg. 5961 (Jan. 17, 2025). In this act, Secretary Mayorkas also announced that "individuals registered under either the [2021 Designation] or the [2023 Designation]" could register under the extension of the 2023 Designation, to obtain protection through October 2, 2026. *See id.*

In January 2025, Kristi Noem became Secretary of Homeland Security. The following month, she implemented two relevant decisions. First, she vacated the January 2025 extension of the 2023 Designation. *See* 90 Fed. Reg. 8805 (Feb. 3, 2025). Second, she terminated the 2023 Designation altogether, effective April 2, 2025. *See* 90 Fed. Reg. 9040 (Feb. 5, 2025) (collectively, the Court refers to the two decisions as the "Secretary's 2025 Actions"). Thus, after April 2, 2025, only the 2021 Designation would remain in effect, and that designation would expire in September 2025.

**B. Petitioners**

Petitioners Luis Enrique Bruzual Carrion, Juan Carlos Rua Castillo, and Rogelio Alberto Olivero Nava are Venezuelan nationals.

Bruzual arrived in the United States in 2021 after fleeing Venezuela because he "was being threatened and harassed for [his] political opinions and [his] opposition to the current

government and feared for [his] life." (Bruzual Decl., Doc. 1–2, ¶ 4) In 2024, Bruzual received TPS protection based on the 2023 Designation, and the following year he sought re-registration, although the Court's review of the record leaves unclear whether he received approval. In January 2026, immigration officials detained Bruzual and later transferred him to the Port Isabel Detention Center.

In 2022, Rua arrived in the United States. In 2024, he received TPS approval under the 2023 Designation, and the following year he renewed his status. In November 2025, immigration officials detained Rua at an ICE check-in. ICE subsequently transferred him to the Port Isabel Detention Center.

Olivero arrived in the United States in 2023 after being tortured in Venezuela "because [he] was a member of a political party that opposed the government." (Nava Decl., Doc. 1–1, 2) In 2024, Nava received TPS approval based on the 2023 Designation and he re-registered in September 2025. The following month, immigration officials took him into custody when he reported for an ICE check-in.

Each Petitioner is a member of the National TPS Alliance ("NTPSA"), which is a member-led organization that represents TPS holders in the country.

**C. California Litigation**

Petitioners request that the Court give preclusive effect to a declaratory judgment issued in *National TPS Alliance v. Noem, et al.*, No. 25-CV-01766-EMC, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025) ("California Litigation").

That matter began in February 2025, when NTPSA, along with seven of its members, brought suit in the Northern District of California to challenge the Secretary's 2025 Actions under

the Administrative Procedure Act and the Equal Protection Clause of the Fourteenth Amendment. NTPSA also sought a declaratory judgment that the Secretary's 2025 Actions were unlawful.[1]

In March, the court issued preliminary injunctive relief in NTPSA's favor. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. 2025) ("Postponement Order"). The court concluded that NTPSA had demonstrated a substantial likelihood of success on its APA and Equal Protection claims. As relief, the court granted "[p]laintiffs' motion to postpone the agency actions at issue" and applied the relief "nationwide." *Id.* at 867. Based on the postponement, TPS remained in effect for covered individuals under both the 2021 Designation and the 2023 Designation.

The Secretary appealed and sought a stay of the Postponement Order. After the Ninth Circuit denied the request, the Secretary sought relief from the Supreme Court, which in May 2025 granted a stay of the Postponement Order. The stay remained in effect pending the resolution of the appeal to the Ninth Circuit "and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2729 (2025).

In August, the Ninth Circuit affirmed the district court's decision to postpone the Secretary's 2025 Actions. *See Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2025). The court explained that the Secretary's 2025 Actions had "stripped" hundreds of thousands of people "of [TPS] status and plunged [them] into uncertainty." *Id.* at 1029. The court affirmed the "postponement of agency action under the APA, effective nationwide," finding such relief "both permissible and necessary[.]" *Id.*

As the appeal of the Postponement Order progressed, proceedings also continued in the district court. In September 2025, the district court granted summary judgment in NTPSA's favor as to the APA claim.[2] The court concluded that "the Secretary's decision to terminate the 2023

---

[1] Although the California Litigation involved several plaintiffs, in this Order and Opinion, for ease of reference, the Court refers to them collectively and in the singular person as "NTPSA." The California Litigation also included claims related to the TPS program and Haiti. Those issues do not bear relevance to the instant matter.

[2] NTPSA did not move for summary judgment as to the Equal Protection claim. The defendants in the California Litigation moved for summary judgment in their favor on this cause of action, but the California court denied that motion. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1158 (N.D. Cal. 2025).

Designation was unlawful" under the APA. *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1153 (N.D. Cal. 2025) ("Summary Judgment Order"). Based on that conclusion, the court "set[ ] aside, or vacate[d], each of the [2025 Actions] made by Secretary Noem." *Id.* at 1160; *see also id.* at 1164 (summarizing its findings and remedy: "It finds [the 2025 Actions] of Secretary Noem are unlawful and sets aside each of those agency actions."). After directing the Clerk of Court to enter final judgment in NTPSA's favor as to its APA claim, and aware that the Government would appeal the decision, the court stayed the matter as to the Equal Protection claim. *Id.* at 1164.

On September 17, the Ninth Circuit denied the Government's request to stay the relief afforded through the Summary Judgment Order. *See Nat'l TPS All. v. Noem*, 163 F.4th 1152 (9th Cir. 2025). But the following month, the Supreme Court granted such relief. Taking into account its previous stay of the Postponement Order, the Supreme Court explained that "[a]lthough the posture of the case has changed, the parties' legal arguments and relative harms generally have not. The same result that we reached in May is appropriate here." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). The Supreme Court rendered the stay effective "pending the disposition of the Government's appeal in the [Ninth Circuit] and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Id.*

As the appeal of the Summary Judgment Order continued, NTPSA returned to the district court and moved for a declaratory judgment. On December 10, the district court granted the requested relief. The court explained that "Plaintiffs do not assert any new legal theory in support" of a declaratory judgment, and that "the requested relief is essentially derivative of the earlier [summary] judgment." *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 3539156, at *1 (N.D. Cal. Dec. 10, 2025) ("Declaratory Judgment"). In opposition, the Government relied on the Supreme Court's stay of the Summary Judgment Order. The district court rejected the argument, reasoning that "there are several reasons why the Supreme Court could have stayed the Court's final judgment setting aside the agency actions but still left open the door to declaratory relief[.]"

*Id.* Thus, "[b]ased on the merits analysis in its prior summary judgment order, the Court declare[d] that (1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Id.* at *3. The court described the Declaratory Judgment as "a lesser form of remedy than that already granted." *Id.* at *1.

In January 2026, the Ninth Circuit affirmed the Summary Judgment Order. *See Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026). The Government defendants filed a timely petition for a writ of certiorari.

On June 25, the Supreme Court issued its decision in *Mullin v. Doe*, 609 U.S. 324 (2026), which involved a consolidated challenge to the Secretary's decision to terminate TPS as to Syria and Haiti. The plaintiffs based their challenges upon the Administrative Procedure Act and the Equal Protection Clause. The Supreme Court held that the TPS statute prohibits judicial review of non-constitutional challenges, such as claims under the APA.[3]

On October 5, the Supreme Court granted certiorari in the California Litigation, vacated the Ninth Circuit's January 2026 judgment, and remanded the case to the Ninth Circuit "for further consideration in light of *Mullin v. Doe*, 609 U. S. 324 (2026)." *Mullin v. Nat'l TPS Alliance*, No. 26-48 (U.S. Oct. 5, 2026).

**D. Procedural Background**

In February 2026, Petitioners filed this habeas action, alleging that they enjoy TPS protection and, based on that status, are entitled to immediate release because Section 1254a(d)(4) prohibits their detention based on their immigration status. Petitioners moved for emergency injunctive relief on their claims.

The Court denied Petitioners' request for a temporary restraining order and preliminary injunction. (*See* Order and Opinion, Doc. 26) The Court concluded that collateral estoppel applied

[3] The Supreme Court also concluded that plaintiffs' claims under the Equal Protection Clause were without merit.

to render the California Litigation preclusive, but found that the only effective relief from that litigation was the declaratory judgment, which lacked any coercive element.

After the Supreme Court issued its decision in *Mullin v. Doe*, the Court ordered the parties to submit supplemental briefing as to the impact of that case on the current matter. The parties timely submitted their briefing. (*See* Supp. Brief, Doc. 34, Resp., Doc. 35)

## II. Standard of Review

When considering motion under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). If a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g.*, *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

"To survive a motion to dismiss [based on Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

## III. Analysis

### A. Non-Constitutional Claims

Respondents seek dismissal of Petitioner's non-constitutional claims for lack of subject matter jurisdiction, relying on the jurisdictional bar found in 8 U.S.C. § 1254a(b)(5)(A). Through that provision, Congress established that "[t]here is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."[4] *Id.* Respondents construe this language broadly, so as to encompass Petitioner's challenge of the Secretary's 2025 Actions.

In *Mullin v. Doe*, the Supreme Court applied Section 1254a(b)(5)(A) to preclude non-constitutional claims challenging the termination of TPS as to Haiti and Syria. The Court found the statute's text "clear, and its plain meaning very broad." *Mullin*, 609 U.S. at 339. The jurisdictional bar applied to the "final decision to terminate these countries' TPS designations." *Id.* In addition, the language encompassed a challenge of the Secretary's "decision to consult the State Department in a particular manner and her decision that country conditions in Syria and Haiti justified termination of their TPS designation." *Id.* Based on this reasoning, the Supreme Court held "that the TPS statute's judicial-review bar applies to [the petitioners'] non-constitutional claims."[5] *Id.* at 345.

In the present matter, the Court finds that the reasoning of *Mullin v. Doe* applies equally to Petitioners' non-constitutional claims. Petitioners allege that the "vacatur and termination of TPS for Venezuela" is unlawful. (Pet., Doc. 1, 8) The jurisdictional bar of Section 1254a(b)(5)(A) squarely applies under *Mullin v. Doe* to any claim regarding the termination of TPS for Venezuela. Implicitly recognizing this straightforward application, Petitioners attempt to distinguish *Mullin*

---

[4] The Homeland Security Act of 2002 transferred the primary responsibility for enforcing immigration laws from the Attorney General to the Secretary of Homeland Security. *See* Pub. L. No. 107-296, 116 Stat. 2135 §§ 441–46 (2022). The United States Code, however, largely retains the old nomenclature.

[5] The Court also reversed the district court's granting of interim injunctive relief based on an Equal Protection claim, concluding that plaintiffs had not demonstrated a substantial likelihood of succeeding on that claim. *Id.* at 350.

*v. Doe* as to their attack on the Secretary's vacatur of the January 2025 extension of the 2023 Designation. According to Petitioners, "[e]ven under *Doe*, vacatur challenges like NTPSA's can proceed." (Supp. Brief, Doc. 34, 1)

The Court finds this proposed distinction unpersuasive. The Supreme Court construed the plain meaning of Section 1254a(b)(5)(A) to be "very broad." *Mullin*, 609 U.S. at 339. That provision covers any decision by the Secretary "with respect to the designation, or termination or extension of a designation" of TPS. *Id.* at 332. Congress's use of "with respect to" "ensur[es] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id.* at 339. In the present matter, Petitioners challenge the Secretary's decision to vacate a prior extension of TPS. This vacatur decision was "with respect to" a TPS extension, and Section 1254a(b)(5)(A) precludes judicial review of this decision.

Petitioners highlight that "while *termination* of a country's TPS is provided for in the statute, *see* 8 U.S. Code § 1254a(b)(3)(B), *vacatur* is not." (Supp. Brief, Doc. 34, 3 (emphasis in original)) But even if Section 1254a does not expressly reference the "vacatur" of a Secretary's prior decision, Petitioners cannot refute that such a vacatur would be "with respect to" the extension of TPS. And this connection between the vacatur and the prior extension triggers the application of Section 1254a(b)(5)(A).

Petitioners also argue that because Section 1254a does not expressly or implicitly authorize the Secretary to vacate a prior extension of TPS, the act was unlawful. (*Id.* at 4) Notably, the current and immediately past administrations took positions inconsistent with Petitioners' argument. As part of the Secretary's 2025 Actions, the Secretary reasoned that the "TPS statute does not limit the Secretary's inherent authority under the INA to reconsider any TPS-related determination, and upon reconsideration, to vacate or amend the determination." *See* 90 Fed. Reg. 8805, 8806 (Feb. 3, 2025). This argument mirrored the position by former Secretary Mayorkas in his June 2023 decision to "rescind" the prior termination of TPS as to El Salvador.

88 Fed. Reg. 40282, 40285 (June 21, 2023). Section 1254a does not expressly authorize the Secretary to "rescind" a prior decision. But in his notice, Secretary Mayorkas explained the basis of his authority:

> An agency has inherent (that is, statutorily implicit) authority to revisit its prior decisions unless Congress has expressly limited that authority. The TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination. *See* INA sections 244(b)(3), (b)(5)(A); 8 U.S.C. 1254a(b)(3), (b)(5)(A).

88 Fed. Reg. 40282, 40285 (June 21, 2023). And ample authority recognizes that agencies possess inherent powers to fulfill their statutory obligations, as long as its exercise of power does not conflict with a statutory provision. *See, e.g.*, *Macktal v. Chao*, 286 F.3d 822, 825 (5th Cir. 2002) ("[I]t is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decision."). Here, the Secretary's vacatur or rescission of a prior decision does not directly conflict with any provision within Section 1254a.

Finally, Petitioners contend that despite *Mullin v. Doe*, this Court should continue to apply collateral estoppel as to the Declaratory Judgment. (Supp. Brief, Doc. 34, 2) The Court disagrees. Although the Court in its consideration of Petitioner's request for emergency injunctive relief previously applied collateral estoppel effect to the Declaratory Judgment, that determination occurred before *Mullin v. Doe*. The Court finds that the reasoning of the Supreme Court's decision negates the jurisdictional analysis within the Declaratory Judgment. And no authority suggests that a court should continue to apply a district court decision that is contrary to governing Supreme Court precedent.[6]

For these reasons, the Court concludes that Section 1254a(b)(5)(A) applies and precludes Petitioners' non-constitutional claims.

[6] In addition, even if the Court accepted the Declaratory Judgment as preclusive, doing so would not entitle Petitioners to relief. The Declaratory Judgment includes no coercive element, much less one that would support the release of Petitioners.

**B. Constitutional Claims**

Plaintiffs also allege that their ongoing detention represents a "[d]eprivation of constitutional rights" under the Fifth Amendment's Due Process Clause. (*Id.* at 5; *see also* Pet., Doc. 1, ¶¶ 52–54) The substance of the claim, however, is that Respondents have no legal authority to detain them because of their TPS status. (*See* Resp., Doc. 24, 9 ("Because the NTPSA Declaratory Judgment is a final and binding judgment with respect to the rights of the parties, Petitioners have TPS.")) As previously explained, the Court finds this premise unfounded, as the Secretary's 2025 Actions remain in effect, rescinding TPS as to Venezuela for individuals in Petitioners' circumstances. And this finding necessarily defeats any due process claim based on the (faulty) argument that Respondents enjoy TPS protection.

For their part, Respondents represent that they detain Petitioners under 8 U.S.C. § 1225(b)(2)(A). (*See* Motion, Doc. 23, 24) And Petitioners do not contest that this statute applies, and that the Fifth Circuit has foreclosed any statutory arguments regarding mandatory detention under that statute. (*See* Resp., Doc. 24, 10) They note that some courts have concluded that mandatory detention under Section 1225(b)(2)(A) violates an alien's rights under the Due Process Clause. (Resp., Doc. 24, 10 n.3 (citing cases)) But other courts have considered and rejected similar arguments. *See, e.g.*, *Zuniga v. Lyons*, 814 F. Supp. 3d 685, 696 (N.D. Tex. 2025); *Guzman-Diaz v. Noem*, No. 3:25-CV-3008-X-BN, 2026 WL 309938, at *8 (N.D. Tex. Feb. 5, 2026); *Giron v. Noem*, No. 4:26-CV-00086, 2026 WL 252370, at *2 (S.D. Tex. Jan. 28, 2026); *see also Castellano v. Strong*, No. 6:26-CV-125-H, ___ F.Supp.3d ___, 2026 WL 2225137, *6 (N.D. Tex. Aug. 3, 2026) ("The Due Process Clause does not require the United States to release aliens in ongoing removal proceedings after a certain period of time."). These decisions applied the Supreme Court's jurisprudence recognizing that for aliens seeking admission, due process is satisfied through the procedures and rights that Congress elects to enact through legislation. *See, e.g., Demore v. Kim*, 538 U.S. 510, 523 (2003); *Dep't of Homeland Sec. v. Thuraissigiam*, 591

U.S. 103, 138 (2020); *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Court finds the reasoning in these decisions to be persuasive. As a result, Petitioners fail to present a meritorious claim for relief under the Due Process Clause.

## IV. Conclusion

For these reasons, it is:

**ORDERED** that Respondents' Partial Motion to Dismiss for Lack of Jurisdiction, and Motion to Dismiss for Failure to State a Claim (Doc. 23) is **GRANTED**;

**ORDERED** that Petitioners' Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is **DENIED**.

In addition, in light of this Order and Opinion, it is also **ORDERED** that Respondents' Motion to Reconsider (Doc. 29) is **DENIED** as moot.

Signed on October 15, 2026.

Fernando Rodriguez, Jr.
Fernando Rodriguez, Jr.
United States District Judge